Our second and last case this morning is number 14-1302, Two-Way Media, LLC versus AT&T, Mr. Phillips. Good morning, your honors. You may please the court. The district court committed four fundamental errors that I'd like to discuss today. Mr. Phillips, I'd like to get to a court question that's been bothering me. The district court says it finds troublesome that some 18 counsel had received NEFs on behalf of defendants, and that they had been downloaded, but that, quote, nobody bothered to read any of those. Have you all reviewed the billing records of those 18 attorneys? Yes, we have. And do they show in any fashion that anyone looked at those? They show that, I think there's one or two references that people received them, got an email, looked at an email. But again, the problem is, if you're looking at the email, the email tells you that these are ministerial orders. How long did they spend on looking at the email? I'm sure they were, it's either .1 or .25, as I recall. But you didn't submit any declaration saying that no one who downloaded those orders actually read them. Actually, the two declarations that were submitted said that none of the lawyers involved actually read any of the orders. I mean, both of the declarations specifically say that. We didn't bring in every single individual to make that claim, but what they did say is that they had talked to all of the lawyers involved who were notified, and that each of them said that they had not read it. And indeed, Judge Wallach, to my judgment, the fact that there are that many people who didn't read it suggests exactly the problem here, which is that we were completely misled by the electronic notices that were sent to us. To me, I mean, I can't imagine somebody knowing the way, having been in a big law firm, big by Nevada standards, we checked everything. And I can't imagine that at least a paralegal would not open and read every attachment to everything received from a court, let alone the associates or someone. Well, the only thing I can tell you, Your Honor, is nobody did. And the reason nobody did was because the order itself was purely ministerial. It was a pattern of 80 similar orders in which motions were granted, allowing papers to be filed. We obviously did read the substantive order, and we read the order dealing with invalidity. Did anybody read the order granting costs? Yes. Well, didn't they think that was a little odd, because you have to be a prevailing party to have costs be awarded? No more unusual than the fact of pre-judgment and post-judgment interest, because you have to be a prevailing party to have those two, and the judge had entered a separate order granting those previously. And again, none of these orders make any reference to each other. So, I mean, if we had the one, and it said, you know, consistent with what I do with respect to the rest of these, obviously somebody would have run down and checked that out. Isn't that counsel's job to read what comes in from courts? To be sure, yes. But the question is, are there any circumstances in which, notwithstanding that it's within our control, that it's nevertheless excusable? And it seems to me in this situation, where you have a combination of very unique circumstances, clearly misleading notices being sent out in the first instance. Now, the court knew they were misleading, because he amended them the next day and added the specific substantive rulings, but then didn't send notices of those amendments, even though in other circumstances he did send notices of the amendments. But what I don't understand is, did nobody check the docket on a regular basis? I mean, it's not like the old days when we used to have runners that went down to the courthouse and read the dockets every day. That was the first legal job I ever had in college, was being a runner. I mean, we had to check the docket every single day. All you had to do was click on a computer, have one paralegal assigned to check the docket. But the importance of this is that the electronic notices that we receive are the docket. They are supposed to run exactly as the docket is. If you printed out all of the electronic notices of any individual lawyer involved in a case, it is the docket. That's not really true. I mean, the electronic notices are as a convenience to counsel, but the docket itself is what is important and what is legally effective. Well, I think Rule 79 pretty clearly says that you're supposed to put the substance of the order into the notices. And it's one thing, if we didn't have an electronic system, we would be in a situation where we would have had to go down there routinely and check. And we do that in courts where they don't have electronic systems. But there's a reason why most courts have turned to electronic systems, because they But when the court affirmatively misleads by the entry of the notice, then it seems to me that's a legitimate spot for excusable neglect. And the district does this rationale. But excusable neglect seems to me is not the right standard under 6. I mean, 6 seems to be more applicable here than 5. And some of these problems about not checking the docket or not seeing that the cost order was a problem. I mean, 6 says if there's a failure to notify, then there's an ability to get an extension or to reopen the time. Right. So the district court's order here is a bit confusing. And I think he appeared to be under misapprehension that Rule 77 somehow trumped Rule 4. But putting that to one side, it seems to me he's got two grounds here as to why he's not giving you relief. One, he says you should have checked the docket. And that's a bar to relief under 6. To me, that's somewhat questionable. Right. There's no basis in that. But he has another ground. And that is that you actually received the order. And he cites some of these cases about the paper receipt of mail, which is unopened. And the fact that the mail is unopened doesn't excuse the failure to look at it. Could you address that second aspect of his ruling, which depends on the fact that these orders were actually downloaded? Yeah. I mean, the question is, was it served on us? I mean, the orders were sent to us, to be sure. But they were sent to us with a notice that said that these are ministerial orders. So the fact that there are prior cases where somebody actually had the physical document. And the courts have concluded that the Vilo case, I think is the name of it, where he did have the actual document. And the court still held that under subsection 6, he was entitled to relief in those circumstances. So the fact that you actually have the order in hand, or somebody within your office has the order in hand, doesn't take you out of the A6 realm. Which is the case that says if you actually have the order? Avolio v. City of Suffolk, which is a Second Circuit case. That's, of course, the case that predates ECF. Right. But on the core point of whether you have physical possession of the order, and does that fact alone take you out of the A6 rule, the answer is no, it doesn't. We're talking about, under A6, a discretionary determination by the trial court. Right. We have to find that the trial court abused its discretion in reaching the conclusion that it reached. Right. And when you made your arguments to the trial court below, didn't you affirmatively say to the trial court that you were not accusing the clerk of doing anything wrong or committing any legal error? No. I mean, what we said was that this isn't a fight over who did what. I think the words that were quoted, do you deny that? Are you saying that the quote that is in the red brief is not true? No, but if you take the language somewhat out of context. And the context of what we were arguing there was that we didn't think this was one of these where you try to decide between the judge's own clerk or counsel, and that the way to analyze it is... The language was, did not seek to, quote, blame the clerk in these circumstances, as none of the circumstances suggest the clerk did anything wrong, close quote. Right. And in the context of what happened here, I think it's pretty much true. I mean, you didn't have to give us... They had the ministerial order, that notice, you know, he gave us that notice. That was proper. It would have been preferable, and I think probably required that he... But nothing under the rules required him to send us the second notice. But the fact that he, in other circumstances, in fact sent out second notices when rules were mod... When orders were changed, suggests that we had a reasonable basis for taking the action that we did. Okay. It's not, in other words, not a question of whether the clerk was at fault. It's a question of whether you got the notice that was required. That's the... And that was the argument we were making all along. Because I don't think that... It's not a question of the clerk's fault, any more than... I don't think it's a question of our fault. I think it's a question of whether or not this is excusable neglect under these circumstances. If the court... Are there any other questions on the jurisdictional issue? No. Go ahead on the merits. We'll give you a lot of time. Okay. Thank you very much. Well, can I ask a question of how we even reach the merits, even if you're right on the jurisdictional question? I mean, you cite us to two non-correct opinions. Right. Unpublished opinions that don't really address the issue. So, I mean, how do you conclude that we could actually exercise jurisdiction over an appeal that is not technically before us? Well, I mean, the best I can do on that score is to simply cite you to the cases that were courts have gone down that particular path. But if the court prefers, as we said in our brief, to simply vacate the district court's order and remand for him to either enter a new order under A5 or A6, then we would obviously just go back through that process and file the briefs. Yeah. I mean, and that's the part that surprises me the most in all this is that you say, not only should we consider the merits of your appeal that you never filed because the court didn't allow you time to file it, but that there can be no cross-appeal by the other side. I mean, so now you're saying they're too late. Well, no, we didn't say they couldn't cross-appeal. I mean, first of all, I think they should have cross-appealed. I don't know why they didn't file a conditional cross-appeal on the grounds that if there is jurisdiction, the court ought to entertain their cross-appeal. But putting that aside, if they're not looking to prejudice the other side, if they need, if they want to file a cross-appeal, then I'm perfectly happy to go back down to the district court and start over again. But that's not exactly what you said in your brief. You were looking to prejudice. I mean, you were looking to say our merits get to be considered and no one else's. No, actually, I don't think that's, that's not my interpretation of what we said in the brief. What I thought we said was we think they could have protected their rights, but if you disagree and believe that the cross-appeal is appropriate, then you should remand it back to the district court to allow the district court to grant us relief under A5 or A6, and then we'll come back up. We'll file a new notice of appeal within 14 days if they can file a notice of cross-appeal. I suspect the briefs will look a lot similar to the ones that you've got in front of you, but obviously without the jurisdictional issues embedded in them. So why don't we turn to the merits? Okay. I won't prolong this. There seems to me sort of three basic points I'd like to make with respect to the merits. The first one goes to the prior art, the real audio. I think the district court clearly erred in granting summary judgment, taking the real audio portion of the case out from the jury on the grounds of inadequate corroboration. Well, it doesn't seem to me that we're really talking about a corroboration question because I see the black testimony and the manual as saying the same thing. The real question is whether what he describes would come within the claims and create an invalidity problem. It's not a corroboration question. It's a question of what both he said and what the manual corroborated was sufficient. No? That's not the way the district judge analyzed it. No, no. I understand. That's the problem I'm having. I mean, take the recording of the start and stop times and black testimony was exactly the same thing as the manual. In other words, he said that it records the start times and you can figure out the stop times by figuring out how many bytes there were. And he said that's what this prior art showed and that was corroborated by the manual. The question is whether that would satisfy the claim limitation. Right. So, I don't see that as a corroboration question because the document is saying the same thing as the witness said. Well, I think the witness, I mean, the documents themselves don't specifically tell you that you can figure out the time. I mean, they indicate it as the claim requires. They don't actually say it nearly as crisply as I think the testimony was and that was the problem the district judge had. He said if you don't have language in the documents that tracks the language of your witness, then it's not, it's inadequately corroborated. We take it off the paper. Well, I've read the witness and I've read the document. It seems to me they're saying the same thing and the question is, is what they're saying within the claims? Right. In other words, is it sufficient to be able to calculate the stop times? But isn't that a classic jury question then? When we're talking about a matter that the jury ought to be resolving, not the judge under those circumstances. So, and that's basically, I mean, whether you want to think of it as a corroboration problem, the reason I do is because that's the way the district judge framed it. But whether you do it that way or if you conclude, oh yeah, no, it's fully corroborated. That's the way our court addresses it. I mean, you could, under your theory, all the corroboration cases that we've ever issued could be thrown out because you could say, look, if it's not corroborated, cross-examine them and send that to the jury. But our court has been more careful for very specific reasons in requiring corroboration. But I think this court's decision in Lazare-Kaplan is the one that's the clearest on this because there they specifically said that there's nothing in the documents that specifically deals with two of the limitations. And the court said that's not a reason for rejecting that testimony. We use a rule of reason here. And it seems to me if you apply a rule of reason, just like your analysis would a fortiori take you to the point where you say clearly this is a matter that ought to go to the jury under these circumstances. So that's the first error. We're entitled to a new trial on that basis. The second error is the infringement issue. Under the doctrine of equivalence, you have to have the function way result. And it's conceded that our system has a 20-second delay. And therefore, there are literally millions of these events that don't get recorded. They don't get accumulated. And indeed, the reason why we don't do those, we don't record those or accumulate them, is because if we did, we would collapse our system. So it's not done for the purpose of, you know, the result that is sought to be done under their patent is each routed stream of information for each user because you want to have comprehensive data to make available to the people who use that system. That's not our, that's not what we do. That's a substantial difference. And the gap between the 20-second delay and the DVR and the actual events that are recorded is huge. And their own witness said it constitutes a substantial difference. And therefore, again, on that basis, there should be no infringement. The jury is simply wrong on that and that ought to be dismissed. And then finally, with respect to the damages, I can only urge you to read the testimony of their expert because there are at least a half dozen serious mistakes that he made. But the one that sort of at least leaps out of the table at me is the one that conflicts with Witserv where he takes $3.5 million in lump sum payments, converts them into these and calculates the damages. The very fact that he calculated 20 damage numbers based on wildly different sets of speculation is more than enough reason for the court to set aside the damages in this case under these circumstances. Okay. Thank you, Mr. Feltz. We'll give you two minutes for rebuttal. Thank you, Your Honor. Mr. Payne. May it please the Court. The quote from Judge Easterbrook's Seventh Circuit opinion in the court case captures the very essence of this case. The judiciary is not entitled to add time just because the litigant fails to open or read his mail, end quote. Let me ask you first. There seemed to be, as I was saying earlier, two reasons that the district court didn't give relief under A6. One of them is the failure to check the docket. And if that were a reason for denying relief under A6, then A6 would never have any meaning, would it? There were two reasons under A6, of course. A6 requires a lack of notice. I'm taking one at a time. Yeah. And he now noticed. The check the docket notion that it should be denying relief under A6 because somebody didn't check the docket, it seems to me is basically saying, okay, A6 is never going to be available to anybody under any circumstances. I think his docket analysis goes to A5. The first question under A6 is, was there a lack of notice? And the court very clearly found expressly in his eight-page opinion, which was very detailed, that there was notice. He found specifically, and I could quote it if you like, that the moment the paralegals at AT&T's two law firms received those orders, downloaded those orders. Okay. But that's a download, right?  And that's a resumption. So that's what, your understanding is the reason he, the only reason he rejected relief under A6 was because of the downloading. No, that's, I'm addressing the first factor, which is lack of notice. And he found notice because they downloaded, expressly said that. And obviously all of them, admittedly, received the nets. Okay, but we'll get, I'll get back to that. I'm just trying to figure out what you understand the ruling to be. You're saying that they can't get relief under A6 because they downloaded it. Okay. Is there any other reason? Number one, they received notice for several reasons. They downloaded it and they all got the nets and that's sufficient. Number two, he found prejudice. Two-way media would be prejudice. That's the third prong of A6. Okay. And they haven't really challenged that. Are those the only two grounds? Those are the two grounds. He found notice and he found prejudice to two-way media. And there are various reasons about the notice. Okay, so if, with respect to a paper notice, suppose somebody got a letter in the mail from the court that said on the outside of the envelope, annual Christmas party invitation, and it had an order in it disposing of a motion. Would that be notice? If they receive an order, then that's notice. I mean, that's all that's required. Even if the envelope says annual Christmas invitation. If you look at Rule 77. Yes. No, I think if they get the order, they have notice. Even if the envelope was mislabeled in that way. Absolutely. If they receive the order, that's notice. There is no requirement, if you look at Rule 77, Your Honor, about specific wording or levels of detail about notice. It says the clerk should promptly send the order out. That's all it says. There's nothing in Rule 77 about specifics of how to perfect notice. Here, there's no doubt that both law firms received it. All of the attorneys received it. All of the attorneys. It's like the judge said in the court case. They just didn't bother to open the mail. I mean, the starting point of the court's analysis, Your Honor, was the proposition that... the labeling of the mail could justify not reading it. I can't imagine what... Well, let me take you down that road for a minute. Suppose it's in an envelope that says, Act now and you can improve your credit score. And the return address says Experian or one of the other credit companies. And somebody takes it up and says, I'm not interested in that. Tosses it in the trash. The Neff said orders. Subject line, order. We're doing what lawyers do. I'll take you over here. My wife hates when I do this. Surely you can agree with that, can you not? That there's some envelope before the ETF system that says something about a credit score. We're talking paper, right? So in that hypothetical that Judge Dyke gave you, we can get over all the way over here and you'll agree that that's excusable. Well, if you open the envelope... No, they didn't open it. They tossed it in the trash because they didn't want to improve their credit score. That seems so far removed from what's going on here. Yeah, but you have to answer hypothetically. I would say they tossed it in the trash can. Yeah, due to some psychotic action. We're doing a hypothetical over here. I want you to be able to agree with something. The only thing I can agree with, Your Honor, is that when the attorneys receive the Neffs, if it's a paper copy, if they receive the paper copy, that's good enough. I think if they receive the paper copy, that's good enough. You're not going to answer my question. I think in your hypothetical, they have received the order and have received notice. Okay. Then you agree with Judge Dyke's statement there is never any circumstance under which when you get the order... I think what I would say, Your Honor, respectfully, is that in today's ECF system, if you... But I'm with you over there. I want an answer over here. Maybe there's some far-flung example of paper copies not constituting orders or reception of orders. I don't know, quite frankly, but just to be clear, in the Avioli case that counsel cited, the attorney received that order well after the 30-day period. It wasn't receipt of that order during the 30-day period. It was after the 30-day period. And there was nothing misleading. Let's not get away from this issue about the label. Why is it that someone who receives an order and downloads it that's mislabeled can't get relief under ASIC? Why is that? Well, there was nothing mislabeled here. I disagree with the concept that there was anything misleading. I read those orders within minutes. My secretary sent out an email about 10 minutes after the orders came out. Or after what your secretary did. Why is the order not mislabeled? It says, order granting motion to seal or something like that. Why isn't that a mislabeling of the order? The NAF, there's six requirements under the local rule, the electronic filing rules. Number one, time of filing. Two, name of the filer. Three, type of document. Four, text of the document. Five, names of the users. And six, the hyperlink. All those requirements were met here. All of those requirements were met here. The requirements are met if they said, motion to seal granted? Yes, the complaint of AT&T is... They don't have to describe the order? No, the complaint of AT&T is that the text wasn't sufficiently detailed enough. But there's nothing in the local... They don't have to describe that the entry is denying a JMAL motion? No, because the local rules don't demand any particular level of detail at all. And it's not on the clerk to provide sufficient detail to make it interesting to attorneys to read. That's not on the clerk. The clerk has a lot of responsibilities. Here the clerk wrote order in two places... So it doesn't make any difference how misdescribed it is? If it says order... If the docket entry said, motion to allow entry of an appearance, that would be sufficient, even though it's actually a JMAL motion. What would be sufficient? Answer my question. Would that be sufficient if it said, motion for entry of appearance granted? And that was not an accurate description of the order. The order was action on a JMAL motion. Would that be adequate? If it says order, then the attorneys have to read what the hyperlink has. So in your hypothetical, it was what you're describing, I believe, is not accurate because you're talking about a different order. But if the NEF says... What's the answer to my question? If the docket entry said, order for entry of appearance granted, but in fact it was an order denying JMAL, are you saying that would be sufficient notice? No, that's inaccurate. That's inaccurate. So it wouldn't be sufficient notice? No, that's inaccurate. I think that was the question, whether that's accurate and it's inaccurate. It wouldn't be sufficient notice if it's inaccurate. If it says order, my position is simple. If the hyperlink attaches the correct order, then the attorneys have an obligation to read that order. Plain and simple. I mean, that's the starting point of analysis. So even if we had a situation here where it said order granting entry of appearance, they'd lose, right? Order, if it says order, I would say they lose, especially in these circumstances. Let me give you a more realistic hypothetical. So a court, district court issues an order, and often a district court will issue an order that contains 17 different rulings. Isn't it true that in most of those cases the bailiff will list only one rather than 17? It varies, yes. It could say order, stop. It could say order of the first one. It could say order of the first and second one. I mean, it just runs the gamut, Your Honor. Isn't it your position that any competent counsel is required to read any order from a court in their case? As I've tried to say, the proposition is very simple. That if you receive an order and you know it's an order, you have to read it. No ifs, ands, or buts about it. You must read it, and you must read it in its entirety. I mean, that doesn't even. You'd agree with Judge Dyke, I think, that if somehow in the ECF system, a lawyer got something that said Christmas party invitation, and they didn't realize that it contained an order, that might be arguable. Maybe. But if it says order in the subject line of the email and in the nef docket text, and there's a hyperlink to the correct order, then you have to read it. Well, if there's a hyperlink to any order, you have to read it, do you not? I think so, yes. And that's exactly what the judge was saying. He was saying, you received these, you downloaded these, you stored them on your files. It is unfathomable. As a trial judge. That 18 people would not read these. As a trial judge, if I send an order to someone, I believe I have a right to expect that they will read it. Absolutely. Absolutely. And he specifically considered AT&T's excuse, which is its attorneys relied exclusively on the docket text. And he said that wasn't good enough for two reasons. Number one, you have to read the orders. That's what carries the force of law, not the docket text. You have to read my orders. And number two, as Your Honor has mentioned, the docket text doesn't always completely describe the full scope of the order. I raised, with your opposing counsel, large firm practice. And part of what I was trying to say is, I strove. Nobody's perfect. But I strove, and I felt obligated to come as close to perfection as I could. And it's why I agonized. Judge O'Malley talked about runners. It's why I agonized over runners and secretaries and whether they would do what they had to do and was constantly obsessive about looking over their shoulders. I believe that as a minimum standard of conduct, a lawyer has to read orders from the court. And certainly large firm, close to perfection practice requires that. Your point's well taken, which is exactly why I read the quote from Judge Easterbrook. And I have to go back to something that Judge Dyke asked about or commented on, which is a view potentially of a misapprehension about Rule 77 vis-a-vis 486, I believe, was your point. And respectfully, I would refer the court to page four of the order, where Judge Garcia specifically quotes Rule 77. And at the very end, he says specifically, quote, except as allowed by federal rule of appellate procedure 4A. Well, I know he says that in one place, but there are other places there where he seems to think that 77 trumps 4. A couple other points. And then he proceeds to quote 4A5 and 4A6. And then when he goes back to Rule 77, he says under the rules, lack of notice, standing alone will not extend the time. Standing alone. Those are the critical words. Standing alone. And that is perfectly consistent with the weight of the authority. We have cited cases supporting our position. Do you want to spend a few minutes on the merits? I'm happy to. As to the corroboration point, isn't it true that you're not really dealing with the corroboration issue since the manual and the testimony were the same? I mean, the question is whether the testimony was sufficient together with the manual to show invalidity or show prior art. Yeah, I was at that deposition. I cross-examined Mr. Black, and his testimony, with all due respect, was much different than to the manual. There are multiple flaws. How was it different from what was in the manual? Well, for number one, the manual, and this is the first fatal flaw, the manual is about a commercial system that they sold many months later after the beta system. His testimony was about the beta system, or the alleged beta system, on May 1 of 1995. The manual goes to the later commercial version. In the documents they produced expressly say that there were changes made in that commercial version that were not in the beta system. And specifically, the documents say that enhanced logging features were added to the commercial version. So the first problem is that they have no corroboration, Your Honor, of any of the features of the beta system. They have no corroboration at all. And then as you drop down to the claim limitations specifically, there are two other fatal flaws. One is on the record-keeping claim limitation, and the other is on the controlling and routing limitation. The record-keeping, his testimony, was the same as the manual, no? His testimony- How was it different? Well, the manual doesn't clearly say, number one, that it's stop time. But let's assume that it says stop time and bits or bytes transferred. It does say that. Of course, that's a different system. And the documents show that enhanced logging features were added to that different system. But then he came in and he said that in theory, but not in practice, one could do these fancy calculations and take those two in DESHA and somehow get to these other claim records dealing with start time, number one, and elapsed time, number two. But in terms of his testimony about what the system actually did with respect to the start times, I don't see a difference between what he said in his testimony and what the manual says. It's exactly the same. Because the manual doesn't say that you can make those calculations. And in fact, you cannot. Which is what our experts said. But no, the manual does not say you can make those calculations. The manual does not tell people to make those calculations. It's not a question of what the prior art did. It's a question of what you could do with the prior art. In terms of the description of what the prior art did, his testimony is the same as the manual. Your Honor, public use requires a public use. No, I understand that. All I'm saying is he gave some testimony about what the system did. And his testimony is no different from the manual. On the record keeping, his testimony is consistent with the manual in the sense of stop times and vice transfer. And that's it. Right. And that's it. And as a matter of law, that's not good enough. And the court found that too. As a matter of law, that's just not good enough. Good enough for what? To satisfy the claim limitations. Can I ask you about the damages issue? Yes. I guess I'm having a hard time understanding how the ad revenues actually relate to the added value of the patented mention. Yes. Would you like me to address the entire market value argument? Yes. OK. So as the court knows, our damage model is limited to one limitation, the record keeping limitation. The entire market value of U-verse is a lot of things. The subscriber revenues for the TV U-verse service, number one. Number two, the advertising revenues for the TV U-verse service. Number three, there are other TV revenues, like on-demand revenues. That's the entire market. I get that. We dropped down to a portion. I get that the ad revenue is only a portion. And so that was an effort at a portion. But I guess I'm trying to understand how the ad revenues wouldn't have been expended regardless of the record keeping. Well, at the time of the hypothetical negotiation, December 2005, the evidence is as follows. And this is from AT&T's corporate representative, Mr. Whitehead. He testified at A-15-345, lines 10 through 14, that at the time when they were making those ad projections, they were all based on the record keeping and the targeting that the record keeping would provide. So their mindset at the time of the hypothetical was that all of these projections would be based on the new record keeping functionality. That's point one. Point two is we cited a host of documents from AT&T that talk about the record keeping in the context of the ads and the revenues being a key strategic area. That's a quote. That the advertisers want this measurability and this record keeping. That the record keeping was going to be, quote unquote, a foundation of the ad business. And that they were going to use that record keeping in specific measurements to distinguish their business from their competitors which used inadequate records. And the sites there are 830220, 30223, 30423, 30550 through 51, and 30631 through 32. Those are the best sites for that proposition. So at the time of the hypothetical negotiation, your honor, it was absolutely the case that AT&T, number one, thought that the record keeping would be used for all the ad revenues. And number two, they were going to make that a foundation for their new advertising business. Does that address your question? Yes. Thank you. Anything else? OK. Thank you. Thank you, Judge Stein. Mr. Phillips, you have two minutes here. Thank you, your honor. It seems to me that the one rule that counsel and my friend didn't cite was rule 79, which expressly requires that the substance of every order has to be entered on the docket. And that was not done in this case. So rule 79 was violated. It was incorrected subsequently, but we weren't given notice of that correction. This is, I think, hopefully a once in a lifetime event for any major law firm or any major party because I don't think there are any that won't read all the orders henceforth. But the question here is, is this excusable neglect? And it seems to me under either A5, whether it's excusable neglect under A5 or whether there's any basis for anything other than recognizing that under A6 we are entitled to have it reopened. And what we said in our brief was while we thought that the court could decide that they made a tactical choice on the cross appeal, if you didn't agree with that, we would be perfectly comfortable with just sending it back for an A5, A6 determination. And then we'll be back up here again under those circumstances. I always enjoy arguing in front of this court. So that would be my honor. With respect to the corroboration point, it seems to me everything my friend said to you is a jury issue. What do you do with this? They could clearly impeach Mr. Black with what does he remember about the manual. But the good news is he was the guy who put the manual together. He knows more about the manual than anybody. So he would have been a perfect witness on that score. And the reason this court rejected it was purely on this corroboration theory that, frankly, has no merit. And then finally, with respect to the damages, whether it's an entire market value rule or just simply a problem of apportionment, the core here is that there is no basis. And even their own expert testified specifically that advertisers do not do business with AT&T because of record keeping. That's on page 31 of our reply brief. And the sites are 15202 and 15203. He recognized that there is no basis. It's a fact. It is not the reason why advertisers use the AT&T system. OK. Thank you, counsel. Thank both counsel. The case is submitted. That concludes our session for today. Thank you. Now, the floor is yours. So is that minute at 3 PM?